UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DANIEL HIDALGO-ARGOTE,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-3279-MLP

ORDER

Petitioner is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. He filed, through counsel, this 28 U.S.C. § 2241 habeas action, asserting his September 2, 2026, arrest and detention, without first receiving notice and an opportunity to be heard, violated his Fifth Amendment right to due process. (Dkt. # 1, ¶¶ 39-56.) He seeks release from custody and permanent injunctive relief related to future redetention. (*Id.* at 11-12.) Respondents filed a return memorandum (dkt. # 5), together with declarations from U.S. Department of Homeland Security Deportation Officer Freite Subero Arias (dkt. # 6) ("Subero Arias Decl.") and their counsel Michelle Lambert (dkt. # 7) ("Lambert Decl."). Petitioner did not file a traverse in reply.

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1) for the reasons set forth below.[1]

## I. BACKGROUND

Petitioner Daniel Hidalgo-Argote is a native and citizen of Colombia who was admitted to the United States on July 10, 2016, at the Fort Lauderdale-Hollywood International Airport in Fort Lauderdale, Florida. (Subero Arias Decl., ¶¶ 3-4.) His B-2 nonimmigrant visa authorized him to remain in the United States until January 9, 2017. (*Id.*)

Petitioner did not depart the United States after his visa expired. On December 6, 2019, Petitioner filed an application for work authorization with U.S. Citizenship and Immigration Services ("USCIS"). (Lambert Decl., ¶ 2, Ex. D at 4.) On December 7, 2022, Petitioner filed an application for relief with USCIS, which remains pending as of September 28, 2026. (Subero Arias Decl., ¶ 6.)

On November 13, 2024, USCIS approved Petitioner to work in the United States until November 25, 2029. (*See* Lambert Decl., ¶ 2, Ex. B at 2.)

Officer Subero Arias asserts that "[o]n September 1, 2026, [ICE] determined that Petitioner had no lawful immigration status in the United States." (Subero Arias Decl., ¶ 7.) ICE's Emergency and Removal Operations ("ERO") obtained a warrant for Petitioner's arrest. (*Id.*)

The next day, ERO arrested Petitioner at the Seattle-Tacoma International Airport. (Subero Arias Decl., ¶ 8.) ERO served Petitioner with a Notice to Appear ("NTA") charging him as removable under the Immigration and Nationality Act ("INA"). (*Id.*) An ICE officer determined that Petitioner would remain detained pending a final determination of his

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 3.)

immigration case. (*See* Lambert Decl., ¶ 2, Ex. E at 2 (Notice of Custody Determination).) The reasoning for that decision is not in the record. Petitioner requested a review of that determination by an immigration judge, but it does not appear that review ever happened. (*Id.*; *see* dkt. # 1, ¶ 32.) Petitioner was taken to the NWIPC, where he remains detained. (Subero Arias Decl., ¶ 8.)

On September 17, 2026, Petitioner filed a motion for a custody redetermination hearing. (Subero Arias Decl., ¶ 11; *see* Lambert Decl., ¶ 2, Ex. G.) Officer Subero Arias asserts that, as of September 28, 2026, the immigration court had not scheduled a hearing. (Subero Arias Decl., ¶ 11.) It is unclear from the record, and unexplained by Respondents, why Petitioner has not received a custody redetermination hearing by an IJ.

Officer Subero Arias asserts that the Executive Office of Immigration Review ("EOIR") "Courts and Appeals System" ("ECAS") rejected the NTA dated September 2, 2026. (Subero Arias Decl., ¶ 9.) Accordingly, on September 25, 2026, "DHS issued a superseding NTA scheduling Petitioner for an initial hearing before an immigration judge and submitted it to ECAS for filing." (*Id.*) Officer Subero Arias asserts that the superseding NTA "contains the same factual allegations and the same charge of removability as the NTA served on . . . September 2, 2026[.]" (*Id.*) As of September 28, 2026, "EOIR ha[d] not notified DHS of the status" of the superseding NTA. (*Id.*) Officer Subero Arias does not explain why the first NTA was rejected. And because it is unclear whether the most recent NTA has been accepted by the immigration court, it is also unclear from the record whether Petitioner is scheduled for an immigration merits hearing.

Petitioner filed the instant petition on September 11, 2026. (Dkt. # 1.)

## II. LEGAL STANDARDS

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). A petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## III. DISCUSSION

Petitioner's sole claim asserts that his September 2, 2026, detention, without first receiving notice or an opportunity to be heard before a neutral decisionmaker, violated his procedural due process rights under the Fifth Amendment. (Dkt. # 1, ¶¶ 50-57.) Respondents contend that due process did not entitle Petitioner to pre-deprivation notice, and the current statutory regime under 8 U.S.C. § 1226(a) provides "substantial procedural protections" that "satisfy due process." (Dkt. # 5 at 1, 3-11.)

### A. *Mathews* and Due Process

Due process protections extend to all persons within the United States, including noncitizens, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). In immigration detention cases, courts in this Circuit apply the *Mathews* balancing test, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07

(9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

The parties apply the *Mathews* balancing test to Petitioner's individual circumstances but reach opposite conclusions. (Dkt. # 1, ¶¶ 39-48, 54; dkt. # 5 at 6-10.)

*1. Private interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690. Petitioner asserts that his liberty interest was "strong" because the Government could have detained him after his visa expired but instead allowed him to openly live while he developed substantial ties to the United States. (Dkt. # 1 at 8.)

Respondents acknowledge Petitioner's "weighty" liberty interest but argue it was "significantly diminished" because he remained in the United States after his visa expired and "there was process available to him following his detention." (Dkt. # 5 at 7 (quoting *Reyes-Lopez v. Mullin*, 2026 WL 2168047, at *4 (W.D. Wash. July 28, 2026)).) Respondents further assert that Petitioner had not been subject to a flight-risk or dangerousness assessment since he overstayed his visa. (*Id.* at 8.) Thus, assert Respondents, Petitioner's private interest was "the same as any [noncitizen] detained pursuant to Section 1226(a)[.]" (*Id.*)

As Respondents themselves acknowledge, the facts of *Reyes-Lopez* are different than Petitioner's here, in that Petitioner *has* filed an application for relief with USCIS, was authorized to work in the United States until 2029 and has now twice sought a redetermination hearing without success. *Compare Reyes-Lopez*, 2026 WL 2168047, at *4, *with* Subero Arias Decl., ¶ 6 (acknowledging Petitioner filed an application for relief while out of custody); Lambert Decl., ¶ 2, Exs. E (Petitioner's first redetermination request), G (Petitioner's second redetermination request).

Petitioner arguably had a reduced liberty interest shortly after his visa expired in 2017, but there is no evidence the government took any action related to Petitioner's visa expiration for nearly ten years. Respondents do not suggest they were actively seeking Petitioner or otherwise unable to locate him. Indeed, his 2019 and 2022 applications filed with USCIS suggest Petitioner was openly living in the United States while he sought immigration-related relief. Those applications also likely provided information about Petitioner's whereabouts should the government have decided to act on his visa expiration. But it did not. Instead, the only action the government appears to have taken during this time was authorizing Petitioner to work in the United States until 2029 while USCIS processed his asylum application.

Accordingly, the Court finds Petitioner had a liberty interest in remaining free, which was unquestionably deprived when ICE took him into custody on September 2, 2026.

*2. The Risk of Erroneous Deprivation and Value in Additional Safeguards*

The Court next considers the risk of an erroneous deprivation of liberty and any value in additional procedural safeguards. Petitioner cites to *Tello Vazquez v. Mullin*, 2026 WL 1911507, at *4 (W.D. Wash. July 2, 2026), for the proposition that "the absence of notice or an opportunity to be heard before a neutral decisionmaker created a high risk of erroneous deprivation of liberty." (Dkt. 1, ¶ 44.)

Respondents contend the risk was low for several reasons. First, Respondents contend the risk is low because "the substantial process under Section 1226(a) has been available to him." (Dkt. 5 at 8.) Specifically, Respondents assert the risk is low "when a custody determination is made initially by an immigration officer and with the opportunity for review by an immigration judge." (*Id.*) Respondents also contend Petitioner's circumstances are different than those noncitizens who are initially detained, released on specified conditions, and later redetained

without process. (*Id.*) In those cases, argue Respondents, the government "created an implicit promise that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." (*Id.* (citing *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025)).)

Neither of these arguments are particularly persuasive when considering Petitioner's individual circumstances. Respondents' first argument—that procedural protections under § 1226(a) reduce the risk of an erroneous deprivation—is difficult to accept when that process thus far has only failed to function. Noncitizens detained under § 1226(a) are statutorily entitled to a bond hearing "at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). And despite having requested an IJ review of the immigration officer's custody determination on September 2, 2026, and filed a formal motion for a bond redetermination on September 17, 2026, Petitioner still, apparently even to this day, has not received a hearing to review that determination. Thus, even if a post-deprivation hearing was adequate (which, generally, it is not for deprivations of liberty, *see Tello Vazquez*, 2026 WL 1911507, at *3), a person cannot avail themselves to the "substantial procedural protections" under 1226(a) if the entity responsible for providing them fails to do so.

As for Respondents' second argument—that Petitioner's circumstances are different than those noncitizens redetained after being conditionally released—while that is technically true, the risk to Petitioner similarly remained. The principle that "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated" has been extended to those who overstay their visa and the government then elects not to detain. *Zhao v. Janecha*, 2026 WL 2666865, at *2 (C.D. Cal Sept. 9, 2026) (quoting *Hurd v. D.C., Govt.*, 864 F.3d 671, 683 (D.C.

Cir. 2017)); *Huang v. Blanche*, 2026 WL 2271901, at *4-5 (W.D. Wash. July 15, 2026); *Tello Vazquez*, 2026 WL 1911507, at *2. Here, Respondents elected not to seek Petitioner's detention until nearly ten years passed after his visa expired. During that time, he sought immigration relief and obtained work authorization while his relief application remained pending. This entitled Petitioner to pre-deprivation process.

The goals of civil immigration—itself intended to be "nonpunitive in purpose and effect"—are to prevent or reduce flight and protect against danger to the community. *Zadvydas*, 533 U.S. at 690; *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025). Accordingly, there is a high risk of erroneous deprivation absent a pre-deprivation hearing to determine whether either of the goals are accomplished for a particular noncitizen's detention.

Petitioner has now sat in immigration detention since September 2, 2026, without any explanation for his initial detention, without any meaningful review of that decision, and apparently without being placed in valid removal proceedings, at all. The Court accordingly finds there was a high risk of erroneous deprivation and value in pre-deprivation procedural safeguards.

*3. The government's interest*

Respondents assert that "the government's interests in efficient enforcement, protecting the community, and ensuring Petitioner's appearance at removal proceedings are substantial." (Dkt. # 5 at 10.) Through no fault of Petitioner, the current record reflects there is not even a facially compliant and operative charging document opening Petitioner's removal proceedings. The first NTA filed by Respondents was rejected and it remains unclear whether the immigration court's filing system accepted the superseding NTA. The fact that Petitioner is not scheduled for any future immigration hearing—bond, merits, or otherwise—suggests it was not. This fact,

coupled with Respondents' failure to provide a custody redetermination hearing now twice, undermines any suggestion that an efficient enforcement process is being served by Petitioner's detention.

As for protecting the community, Respondents do not connect that interest with Petitioner's circumstances. Neither Respondents, nor the evidentiary record, demonstrate Petitioner poses a danger to the community. He has no criminal history. (Lambert Decl., ¶ 2, Exs. D at 4, G at 3.) Nor is there any suggestion of flight risk.

Respondents had the authority to detain Petitioner, but their interest in doing so without first providing a hearing was low. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Neither contemporaneous DHS records, nor Respondents here, identify an interest that would have been undermined by providing pre-deprivation process. This final factor weighs in Petitioner's favor.

All three *Mathews* factors weigh in Petitioner's favor. The Court concludes that Respondents' detention of Petitioner without first providing pre-deprivation notice and an opportunity to be heard deprived him of a liberty interest in remaining free, that there was a high risk of erroneous deprivation, there was value in additional safeguards, and that Respondents have not asserted a governmental interest that would have made such process impracticable. Habeas relief is therefore warranted under the Due Process Clause of the Fifth Amendment.

Courts in this District generally find that release is the appropriate remedy for a constitutionally deficient detention under *Mathews* because any post-deprivation hearings "occur after the fact" and "cannot prevent an erroneous deprivation of liberty." *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1204 (W.D. Wash. 2025); *see also Ramirez Tesara*, 800 F. Supp. 3d at 1138 (granting petitioner's motion for a

temporary restraining order that challenged his redetention under *Mathews* and finding that "immediate release [wa]s necessary to restore the status quo ante litem") (underlining in original). The Court similarly finds that restoring Petitioner to the status he held prior to his erroneous deprivation is the appropriate remedy.

### B. Injunctive Relief

Petitioner also seeks to enjoin the government from redetaining him in the future without first satisfying certain criteria. (Dkt. # 1 at 11.) Petitioner does not develop a factual record or provide legal authority supporting his request for permanent injunctive relief. (*See generally id.*) His request is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1) The petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

(2) Respondents shall release Petitioner within **forty-eight (48) hours** of this Order, subject to appropriate conditions of supervision consistent with applicable statutory and regulatory authority.

(3) Respondents shall file a status report, no later than **two (2) business days** from the date of this Order, confirming that Petitioner has been released.

(4) Petitioner's request for permanent injunctive relief is DENIED as unbriefed.

(5) The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are encouraged to meet and confer prior to filing any motion.

Dated this 16th day of October, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge